ALLSTATE INSURANCE COMPANY, Plaintiff-Appellant, v. CHRIS EGGERMONT, Indiv. and as Mother and Next Friend of Maria Montez, a Minor, et al., Defendants-Appellees.

Second District   No. 2—88—0480

Opinion filed March 3, 1989.

D. Kendall Griffith and Peter C. Morse, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Kathryn A. Spalding, of counsel), for appellant.

Peter S. Switzer, of Barrick, Switzer, Long, Balsley & Van Evera, of Rockford (Richard M. Butera, of counsel), for appellees James Stewart and Marilyn Stewart.

Alfred W. Cowan, Jr., of Brassfield, Cowan & Howard, of Rockford, for appellee Ralph David Banks.

Christopher J. Bergin, of Jeffrey M. Goldberg, Ltd., of Chicago (William E. Buenger, of counsel), for appellee Chris Eggermont.

JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, Allstate Insurance Company (Allstate), appeals from an order of the circuit court of Winnebago County denying plaintiff's motion and granting defendant Ralph David Banks' (Banks') motion for judgment on the pleadings in a declaratory judgment action seeking an interpretation of a homeowners insurance policy issued by plaintiff to defendant Chris Eggermont.

On August 26, 1984, defendant Chris Eggermont (Eggermont) and her children, Maria and Louis Montez, were staying at the home of Eggermont's parents, defendants James and Marilyn Stewart (Stewart). Maria was injured in an accident involving a riding lawn mower driven by Louis. Maria, by her mother and next friend Eggermont, filed suit against the Stewarts and their gardener, defendant Banks, for the injuries. The Stewarts and Banks counterclaimed against Eggermont seeking contribution and indemnification. Eggermont tendered the counterclaim to plaintiff, Allstate, for defense and indemnification under her homeowners policy purchased from Allstate in August 1984. Allstate accepted the tender under a reservation of rights and filed this declaratory judgment action contending that it has no obligation to defend or indemnify Eggermont under the homeowners policy. This is the second time this case has come before us on appeal. In *Allstate Insurance Co. v. Stewart* (1987), 158 Ill. App. 3d 129, 511 N.E.2d 188, we reversed the trial court's determination that the Stewart's home was not an "insured premises" as defined under Allstate's homeowners policy issued to Eggermont. We then remanded the case to the trial court to determine the second issue raised by the parties: whether section 143.01 of the Illinois Insurance Code (the Code) (Ill. Rev. Stat. 1985, ch. 73, par. 755.01) renders the family household exclusion clause contained in the policy issued by Allstate to Eggermont inapplicable to a suit for contribution against Eggermont for the injuries sustained by her daughter, Maria. The trial court ruled that section 143.01 of Code did not apply to the policy in the instant case. However, the trial court found an ambiguity in the policy on the issue of coverage and construed the contract against Allstate and in favor of the insured, ruling as a matter of law that Allstate was required to defend and, if the contribution suit was successful, pay up to the policy limits of the homeowners policy issued to Eggermont.

The policy in the instant case was entitled "Allstate Deluxe Homeowners Policy." The policy's "Family Liability Protection" section contains a general description of the losses it covers which provided:

"Losses We Cover:

Allstate will pay all sums arising from an accidental loss which an *insured person* becomes legally obligated to pay as damages because of *bodily injury* or *property damage* covered by this part of the policy." (Emphasis in original.)

Immediately below this grant of coverage under "Losses We Do Not Cover" is a list of 12 specific losses the homeowners policy does not cover (exclusions). The relevant exclusions in the instant case are the family household exclusion and the vehicle exclusion. The household exclusion provides:

"2. We do not cover *bodily injury* to an *insured person* or *property damage* to property owned by an *insured person*." (Emphasis in original.)

The vehicle exclusion provided:

"5. We do not cover bodily injury or property damage arising out of the ownership, maintenance, use occupancy, renting, loaning, entrusting, loading or unloading of any motorized land vehicle or trailer. However, this exclusion does not apply to:

(a) a motorized land vehicle in dead storage or used exclusively on an *insured premises*;

(b) any motorized land vehicle designed principally for recreational use off public roads unless that vehicle is owned by an *insured person* and is being used away from an *insured premises*;

(c) a motorized wheel chair;

(d) a vehicle used to service an *insured premises* which is not designed for use on public roads and not subject to motor vehicle registration;

(e) a golf cart owned by an *insured person* when used for golfing purposes;

(f) a trailer of the boat, camp, home or utility type unless it is being towed or carried by a motorized land vehicle;

(g) *bodily injury to a residence employee*." (Emphasis in original.)

The parties agreed that Maria, as a dependant residing with the insured, Chris Eggermont, was an "insured person" under the terms of the policy. Allstate argued that the nature of the defendant's contribution claim was controlled by the underlying claim, which was a bodily injury to Maria. Since Maria was an "insured person" and the household exclusion excluded coverage for bodily injury to an insured person, Allstate had no duty to defend or indemnify Eggermont in a contribution suit against her for injuries sustained by her daughter,

Maria. Defendants do not dispute this interpretation and application of the family household exclusion. Defendants argued that the vehicle exclusion contains numerous explicit exceptions and thus provides insurance coverage for vehicles. Since the policy provides insurance for certain vehicles, it is a policy of vehicle insurance as defined in Class 2(b) of section 4 of the Code (Ill. Rev. Stat. 1985, ch. 73, par. 616(b) (Class 2)) and is subject to applicable laws regulating provisions contained in policies of vehicle insurance. Defendants argued that one such regulation is section 143.01(a) of the Code, which renders a family household exclusion contained in a policy of vehicle insurance inapplicable to a third-party's suit for contribution against a member of the injured person's family. (Ill. Rev. Stat. 1985, ch. 73, par. 755.01(a).) The trial court, relying on a case with similar facts (*State Farm Fire & Casualty Co. v. Holeczy* (1987), 152 Ill. App. 3d 448, 504 N.E.2d 971), ruled that section 143.01 of the Code was not applicable to the homeowners policy issued by Allstate, and, therefore, the family household exclusion was not thereby rendered inapplicable to the contribution suit filed against Eggermont. However, the trial court found that a plain reading of exception (d) of the vehicle exclusion provided coverage for bodily injuries arising out of the use of a vehicle used to service an insured premises, *i.e.*, a riding lawn mower. The trial court reasoned that the family household exclusion, which when read alone would exclude coverage for the contribution suit, was ambiguous in light of the granting of coverage contained in the exceptions to the vehicle exclusion. Having found an ambiguity on the issue of coverage for the injuries sustained by Maria, the trial court construed the contract against Allstate and in favor of coverage and granted defendant Banks' motion for judgment on the pleadings.

On appeal, Allstate argues that the trial court erred when it found the policy ambiguous. Allstate contends that the coverage, for certain vehicles granted by the exceptions to the policy's vehicle exclusion, does not render ambiguous the clear statement excluding coverage for bodily injuries to an insured person contained in the family household exclusion clause. We agree

■■ Where an ambiguity exists in an insurance policy the policy is to be construed liberally to effectuate coverage. (*Allstate Insurance Co. v. Stewart* (1987), 158 Ill. App. 3d 129, 511 N.E.2d 188.) However, this rule of construction is inapplicable where no real ambiguity exists. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 475 N.E.2d 872.) A policy provision is ambiguous if, considering the policy as a whole, it is subject to more than one reasonable interpretation. (*Allstate Insurance Co. v. Stewart* (1987), 158 Ill. App. 3d

129, 511 N.E.2d 188.) If the words of a policy can reasonably be given their plain, ordinary and popular meaning, the provisions should be applied as written, and the parties should be bound by the agreement made. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 475 N.E.2d 872.) The interpretation and construction of an insurance policy where there are no material issues of fact is a question of law, and a reviewing court may make an independent determination on such a question. *Rymer v. Kendall College* (1978), 64 Ill. App. 3d 355, 380 N.E.2d 1089.

■ We find no ambiguity in the disputed policy. Defendants' argument for the existence of an ambiguity, which was accepted by the trial court, is based upon the structure of the exclusions section. We find this interpretation of the instant policy unreasonable. In *Brochu*, our supreme court had an occasion to interpret a home builder's general comprehensive liability policy which was very similar to the structure of Allstate's policy in the instant case. In the *Brochu* case, immediately following the coverage portion of the policy, there was a list of 19 separate exclusions. The court stated: "These exclusions define the limits of coverage actually provided. If any one of the exclusions applies there is no coverage. Thus, they are an integral part of the policy which must be considered in determining the scope of coverage." (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 494, 475 N.E.2d 872, 876.) The defendants in *Brochu* argued, as do defendants in the instant case, that an explicit exception to one of the listed exclusions provided coverage and, therefore, conflicted with and rendered ambiguous other exclusions which appeared applicable to exclude or limit the coverage granted by the exception to an exclusion. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 495, 475 N.E.2d 872, 876.) The court in *Brochu* rejected this interpretation and found that the granting of coverage by way of an exception to an exclusion did not prevent limitation of such coverage by other clear and unambiguous exclusions listed in the exclusions section. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 496-97, 475 N.E.2d 872, 876 (relying on cases from other jurisdictions that held under similar facts that exceptions to exclusions remain subject to and limited by all other related exclusions).) We find the reasoning in *Brochu* controlling in the instant case. While exception (d) to the vehicle exclusion grants liability coverage for accidents involving service vehicles such as a riding lawn mower, the family household exclusion limits such coverage where the bodily injury is to an insured person.

■ ■ However, upon review of an order granting a motion for judgment on the pleadings, an appellate court must affirm on any

proper grounds raised in the motion. (*Village of Lake In The Hills v. Illinois Emcasco Insurance Co.* (1987), 153 Ill. App. 3d 815, 506 N.E.2d 681.) While we agree with Allstate that the policy is not ambiguous as far as application of the family household exclusion, we decline to reverse the trial court because we agree with defendants' original argument below and again made on appeal that the policy is one of vehicle insurance to which section 143.01 of the Code (Ill. Rev. Stat. 1985, ch. 73, par. 755.01) is applicable, thus rendering unenforceable the provisions of the family household exclusion as applied to the contribution suit against Eggermont.

Class 2(b) of section 4 of the Code, which defines classes of insurance, provides in relevant part:

"*Class 2. Casualty, Fidelity and Surety.*
***

(b) *Vehicle.* Insurance against any loss or liability resulting from or incident to the ownership, maintenance or use of any *vehicle* (motor or otherwise), draft animal or aircraft." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 73, par. 616(b) (Class 2).)

The term "vehicle" as used within the text of the definition under Class 2(b) of section 4 is not defined in the Insurance Code. (Ill. Rev. Stat. 1985, ch. 73, par. 616(b) (Class 2).) Where the legislature does not define a term, the courts will assume that the legislature intended the term used to have its ordinary and popularly understood meaning, unless to do so would defeat the perceived legislative intent. (*People v. Hicks* (1984), 101 Ill. 2d 366, 462 N.E.2d 473.) "Vehicle" is defined in relevant part as "a carrier of goods or passengers." (Webster's Third New International Dictionary 2538 (1981).) A riding lawn mower fits within the definition of a vehicle. Allstate does not contend otherwise and, in fact, refers in its brief to a riding lawn mower as being "a vehicle used to service an insured premises" and, therefore, falling within exception (d) to the policy's vehicle exclusion provision. Further, Allstate's policy grants coverage, with certain limitations not relevant here, by way of exceptions (a) through (f) to its general vehicle exclusion. Vehicles covered by these exceptions include motorized land vehicles used exclusively on an insured premises, motorized land vehicles designed principally for recreational use off public roads, motorized wheel chairs, golf carts and trailers. Of further note, Allstate's policy, although entitled homeowners insurance, does contemplate insuring vehicles under certain circumstances as evidenced by its definition of "insured person" contained in the policy. This definition provides in relevant part:

"Under the *Family Liability Protection* coverage and the

*Guest Medical Protection* coverage, 'insured person' also means:

\* \* \*

(d) with respect to the use of any vehicle covered by this policy, any person while engaged in the employment of an *insured person*." (Emphasis in original.)

We find that a riding lawn mower is a vehicle and that the policy is a policy of vehicle insurance as defined under Class 2(b) of section 4 of the Code in that the policy does insure against loss or liability resulting from or incident to the ownership, maintenance or use of a vehicle (motor or otherwise). (See Ill. Rev. Stat. 1985, ch. 73, par. 616(b) (Class 2).) Section 143.01 of the Code provides in relevant part:

"A provision in a policy of vehicle insurance described in Section 4 [(Ill. Rev. Stat. 1985, ch. 73, par. 616)] excluding coverage for bodily injury to members of the family of the insured shall not be applicable when a third party acquires a right of contribution against a member of the injured person's family." (Ill. Rev. Stat. 1985, ch. 73, par. 755.01(a).)

The policy's effective date is August 20, 1984, and section 143.01(a) of the Code became effective July 11, 1984. (Ill. Rev. Stat. 1985, ch. 73, par. 755.01(a); see *State Farm Fire & Casualty Co. v. Ondracek* (1988), 173 Ill. App. 3d 581, 527 N.E.2d 889 (holding section 143.01(a) of the Code (Ill. Rev. Stat. 1985, ch. 73, par. 755.01(a)) was only applicable to insurance contracts entered after effective date of statute).) Section 143.01 of the Code precludes application of a family household exclusion contained in a policy of vehicle insurance to third-party suits for contribution against members of the injured person's family. (Ill. Rev. Stat. 1985, ch. 73, par. 755.01(a).) Accordingly, Allstate is required to defend and indemnify Eggermont in a suit for contribution against Eggermont for injuries sustained by Eggermont's daughter, Maria.

We do not agree with the trial court's application of *State Farm Fire & Casualty Co. v. Holeczy* (1987), 152 Ill. App. 3d 448, 504 N.E.2d 971, to the policy involved in the instant case. The facts of *Holeczy* are similar in that the parents of a child injured by a riding lawn mower operated by the injured child's brother were sued for contribution by the manufacturer of the lawn mower. The parents tendered defense of this third-party contribution suit to State Farm Fire and Casualty (State Farm), which was the issuer of the parents' homeowners policy. The court in *Holeczy* rejected the parent's contention that State Farm's homeowners policy, in fact, provided vehicle coverage and thus was a policy of vehicle insurance to which section

143.01 applied, rendering the family household exclusion unenforceable. (*State Farm Fire & Casualty Co. v. Holeczy* (1987), 152 Ill. App. 3d 448, 504 N.E.2d 971.) However, the court in *Holeczy* reached this result through its reliance on its interpretation of State Farm's policy. We find the policy of Allstate's at issue in the instant case varies significantly from the policy at issue in *Holeczy*.

The court in *Holeczy* relied on a provision in State Farm's policy excluding from coverage "bodily injuries or property damage arising out of the ownership, maintenance, use, loading or unloading of *** (2) a motor vehicle owned or operated by, or rented or loaned to any insured." (152 Ill. App. 3d at 451, 504 N.E.2d at 973.) In *Holeczy*, the court found that the only "vehicle-related casualty" for which coverage might be available is one involving property damage to the mower itself as an unlicensed service vehicle under the "personal property coverage." (152 Ill. App. 3d at 452, 504 N.E.2d at 973.) The court in *Holeczy* reasoned that even if the riding lawn mower was a vehicle under section 4 of the Code (Ill. Rev. Stat. 1985, ch. 73, par. 616), State Farm's policy did not cover liability for bodily injury arising from the use of this vehicle in the first instance. Therefore, regardless of the family household exclusion, the policy certainly did not cover a third-party suit for contribution arising out of an incident for which State Farm's policy never provided coverage. (152 Ill. App. 3d at 451, 504 N.E.2d at 973.) Unlike State Farm's policy, Allstate's policy, as previously discussed, does provide liability coverage for bodily injuries arising out of the use of certain vehicles including a riding lawn mower.

Allstate in its reply brief argues that, in fact, the State Farm policy at issue in *Holeczy* is "virtually identical" to Allstate's policy in the instant case in that it provided liability coverage for bodily injury arising from the use of a service vehicle, namely, a riding loan mower, and, thus, *Holeczy* was properly applied by the trial court. Allstate's argument ignores the fact that the *Holeczy* court, whether correctly or incorrectly, drew the exact opposite conclusion from its interpretation of the State Farm policy as to liability coverage for bodily injuries arising out of the use of a riding lawn mower. Whether we agree with the *Holeczy* court's specific interpretation of the State Farm policy is irrelevant and ignores the real issue. The opinion expressed in *Holeczy* relies on that court's view that the State Farm policy does not provide liability coverage as opposed to the interpretation of Allstate's policy in the instant case, which is that liability coverage is provided under exception (d) to the vehicle exclusion. The *Holeczy* opinion cannot be divorced from that court's interpretation of

the State Farm policy, as Allstate attempts to have us do. Based upon the *Holeczy* court's interpretation of the State Farm policy, that court did not decide the issue before us on this appeal. Accordingly, we find the trial court erred in its reliance on *Holeczy*.

Nor do we find that *Country Mutual Insurance Co. v. Jacobus* (C.D. Ill. 1985), 601 F. Supp. 937, cited by Allstate, directly addresses the facts involved in the instant case. In *Jacobus*, the court refused to find a family household exclusion, contained in a liability policy which provided multiple coverages including vehicle, inapplicable under section 143.01(a) of the Code (Ill. Rev. Stat. 1985, ch. 73, par. 755.01). However, the court in *Jacobus* relied on the fact that bodily injury arose out of the use of a grain auger which it found *was not a "vehicle"* as that term is used under Class 2(b) of section 4 of the Code defining policies of vehicle insurance. (Ill. Rev. Stat. 1985, ch. 73, par. 616(b) (Class 2); *Country Mutual Insurance Co. v. Jacobus* (C.D. Ill. 1985), 601 F. Supp. 937.) The two cases relied upon by Allstate, to argue that section 143.01 of the Code does not apply, are distinguishable because, unlike those cases, the bodily injury in the instant case arose (1) incident to the use of a vehicle *and* (2) liability coverage was provided under the terms of the policy for injury incident to that use of the vehicle. As previously explained, under such facts, section 143.01(a) of the Code prohibits the application of family household exclusions to third-party suits for contribution against members of the injured person's family. Ill. Rev. Stat. 1985, ch. 73, par. 755.01(a).

Allstate argues that our application of section 143.01 of the Code to the facts of this case was never intended by the legislature. Allstate argues that the "clearest indication of the legislative intent comes from the General Assembly itself." Allstate then relies upon the statements of two members of the General Assembly which refer to automobile insurance policies when debating passage of section 143.01(a). Allstate then argues "it is patently clear that the legislature intended the section to apply only to automobile liability policies." We find little, if any, merit to this argument. First, legislative intent speaks to the will of the legislature as a collective body, rather than the will of individual legislators (*Morel v. Coronet Insurance Co.* (1987), 117 Ill. 2d 18, 509 N.E.2d 996), and statements made on the floor during legislative debate do not in and of themselves affirmatively establish legislative intent. (*Old Ben Coal Co. v. Human Rights Comm'n* (1986), 150 Ill. App. 3d 304, 501 N.E.2d 920.) Second, the statutory language itself is the best indication of the intent of the drafters, and where intent can be ascertained from the language of the statute, it will be given effect without resort to extrinsic aids for

construction. (*People v. Robinson* (1982), 89 Ill. 2d 469, 433 N.E.2d 674.) Our reading of the Code (see Ill. Rev. Stat. 1985, ch. 73, par. 613 *et seq.*) does not support Allstate's argument that the legislature intended section 143.01(a) (Ill. Rev. Stat. 1985, ch. 73, par. 755.01(a)) to apply only to automobile liability policies. Section 143.01(a) by its reliance on the classification contained in Class 2(b) of section 4 of the Code (Ill. Rev. Stat. 1985, ch. 73, par. 616(b) (Class 2)) explicitly applies to "any vehicle (motor or otherwise), draft animal or aircraft." (Ill. Rev. Stat. 1985, ch. 73, par. 755.01(a).) Further, if the legislature intended section 143.01(a) of the Code to apply only to automobile insurance policies as opposed to policies of vehicle insurance as defined in Class 2(b) of section 4, it could have easily done so by limiting application of section 143.01(a) to policies of automobile insurance as defined under section 143.13(a) (Ill. Rev. Stat. 1985, ch. 73, par. 755.13(a); see *People v. Russell* (1986), 143 Ill. App. 3d 296, 492 N.E.2d 960 (where legislature uses certain words in one instance and different words in another, different results were intended)). To accept Allstate's argument and to interpret section 143.01(a) to apply only to policies of automobile insurance would be unreasonable and violate well-established rules of statutory construction. (See *In re Annexation to City of Prospect Heights* (1982), 107 Ill. App. 3d 1045, 438 N.E.2d 574 (where statute can be reasonably interpreted so as to give effect to all its provisions, a court will not adopt a strained reading which renders a part superfluous).) Lastly, by this holding, we do not, as Allstate argues, hold that a family household exclusion, contained in an insurance policy which also provides some vehicle insurance, is totally inapplicable even where no vehicle is involved in the incident giving rise to the liability of the insured. We only hold that to the extent a policy of insurance, or a part thereof, provides vehicle insurance as defined under Class 2(b) of section 4, and only to such extent, section 143.01(a) applies and renders the household family exclusion contained in the policy inapplicable to third-party suits for contribution against a member of the injured person's family. Ill. Rev. Stat. 1985, ch. 73, par. 755.01(a).

The judgment of the circuit court is affirmed.

Affirmed.

McLAREN and WOODWARD, JJ., concur.