Connie **GRACEY**, As Mother and Next Friend of James Belt; and Connie Gracey, Individually, Appellants,

v.

**HERITAGE MUTUAL INSURANCE COMPANY, Appellee.**

No. 93–916.

Supreme Court of Iowa.

June 22, 1994.

Michael G. Reilly of Perkins, Sacks, Hannan, Reilly & Petersen, Council Bluffs, for appellants.

Michael G. Mullin and Ronald L. Comes of McGrath, North, Mullin & Kratz, P.C., Omaha, NE, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, SNELL, and TERNUS, JJ.

PER CURIAM.

Plaintiff appeals from the district court ruling that an insurance policy did not provide liability coverage. We affirm.

Eleven-year-old Justin Putnam accidentally ran over the foot of his friend, twelve-year-old James Belt, with a lawn mower. Justin was using his aunt and uncle's riding lawn mower to cut his grandparents' grass.

Connie Gracey, individually and as mother and next friend of James, filed suit against Justin and his parents. Justin's parents' homeowner's insurer, Heritage Mutual Insurance Company (Heritage), refused to provide a defense. A consent judgment was entered for $100,000 and Justin's parents assigned to Gracey their rights to recover from Heritage.

Gracey filed suit against Heritage. The parties stipulated to the facts and moved for an adjudication of law points as to whether the policy provided liability coverage.

Justin was an insured by definition under the policy, but the policy excluded coverage for injuries "arising out of ... use ... of vehicles or all other motorized land conveyances ... operated by ... an insured." This exclusion did not apply, however, to "a vehicle or conveyance not subject to motor vehicle registration which is ... used to service an insured's residence."

The district court held the policy did not provide coverage, concluding there was no ambiguity and the ordinary meaning of motorized land conveyance included a riding lawn mower.

Gracey appeals.

The construction and interpretation of the motor vehicle [and motorized land conveyance] exclusion in this case are matters of law to be resolved by the court when, as here, neither party offers extrinsic evidence about the meaning of the relevant contract language.

*North Star Mut. Ins. Co. v. Holty*, 402 N.W.2d 452, 454 (Iowa 1987). According to the well-established rules for construction and interpretation of insurance policies, the policy is to be construed as a whole, giving the words used their ordinary, not technical, meaning to achieve a practical and fair interpretation. *Id.* When the terms are ambiguous, the meaning favorable to the insured is adopted. *Farm Bureau Mut. Ins. Co. v. Sandbulte*, 302 N.W.2d 104, 108 (Iowa 1981). However, the mere fact parties disagree on the meaning of the terms used does not establish ambiguity. *Id.* "The test is an objective one: Is the language *fairly* susceptible to two interpretations?" *Id.*

In concluding a riding lawn mower was a motorized land conveyance, the district court relied on a decision of the North Carolina Court of Appeals, *State Automobile Mutual Insurance Co. v. Hoyle*, 106 N.C.App. 199, 415 S.E.2d 764, 767 (1992) (holding a go-cart fit within the definition it derived of motorized land conveyance: "any-

thing equipped with something that produces motion which is used on land as a means of taking something or someone from one place to another").

Gracey claims the policy is ambiguous or that the district court erred in concluding a riding lawn mower was a motorized land conveyance because its primary function is to cut grass and not for transport.

The policy does not define either "motor vehicle" or "motorized land conveyance." When terms are not defined in the policy, we give them their ordinary meanings. *Holty,* 402 N.W.2d at 455. The riding lawn mower was not self-propelled, but contained an engine. Consequently, it was "motorized." It was designed for use on land. The question therefore becomes whether a riding lawn mower is a vehicle or conveyance. A dictionary definition of conveyance is "a means of carrying or transporting something (as persons or passengers): VEHICLE." Webster's Third New International Dictionary 499 (1993).

A riding lawn mower carries or transports its operator. The fact that, as it transports its operator, a riding lawn mower performs other work by cutting the grass does not mean it has ceased being a conveyance. *See Miller v. Allstate Ins. Co.,* 560 So.2d 393, 394 (Fla.App.1990) (riding lawn mower is a vehicle under the Florida no-fault act); *cf. Mull v. Equitable Life Assurance Soc'y of the United States,* 196 Mich.App. 411, 493 N.W.2d 447, 451 (1992) (front-end loader is within definition of "motor vehicle" in Michigan's owner's liability statute); *State Farm Mut. Ins. Co. v. Wyant,* 154 Mich.App. 745, 398 N.W.2d 517, 519 (1986) (farm tractor is within definition of "motor vehicle" in Michigan's no-fault act). In construing the policy as a whole, we find additional support for treating a riding lawn mower as a motorized land conveyance: If the accident had occurred at the insured location where coverage would be expected, the exception from exclusion for service vehicles would have operated to afford coverage. *See Allstate Ins. Co. v. Eggermont,* 180 Ill.App.3d 55, 129 Ill. Dec. 282, 285, 535 N.E.2d 1047, 1050 (1989) (finding that, although a riding lawn mower was a motorized land vehicle excluded from

coverage under a homeowner's policy, it fit within the exception from exclusion for service vehicles). We hold a riding lawn mower is a motorized land conveyance under the terms of the policy and coverage was excluded.

**AFFIRMED.**