NO. 4-96-0633

                          IN THE APPELLATE COURT

                                OF ILLINOIS

                              FOURTH DISTRICT

COUNTRY CASUALTY INSURANCE COMPANY,)    Appeal from

          Plaintiff-Appellee,      )    Circuit Court of

          v.                       )    Macon County

TAMARA FISHER, Individually and as )    No. 95MR40

Mother and Next Friend of THOMAS   )

WAYNE FISHER, a Minor, and         )

JOHN FISHER,                       )

          Defendants-Appellants,   )

          and                      )    Honorable

JODI ARNDT,                        )    John K. Greanias,

          Defendant.               )    Judge Presiding.

_________________________________________________________________

          JUSTICE McCULLOUGH delivered the opinion of the court:

          Defendants Tamara Fisher, individually and as mother and

next friend of Thomas Wayne Fisher, a minor, and John Fisher,

appeal from a declaratory judgment in favor of plaintiff Country

Casualty Insurance Company.  This case involves the question of

whether an insurance policy issued by plaintiff to cover the Fisher

residence also covered an action for contribution against Tamara in

the underlying lawsuit based on an injury sustained by Thomas when

he was struck by a motor vehicle operated by Jodi Arndt.

          The issues are whether (1) the subject homeowner's

insurance policy is a policy providing coverage in this case

because a vehicle is involved and the household exclusion in the

policy violated section 143.01(a) of the Illinois Insurance Code

(Code) (215 ILCS 5/143.01(a) (West 1994)); and (2) the household

exclusion contained in the policy violates public policy.  We

affirm.

          The complaint in the underlying case alleged that seven-

year-old Thomas was struck by an automobile driven by Arndt in the

200 block of Sherman Street in Macon, Illinois, at about 1:45 p.m.

on July 27, 1993, while he was in the process of crossing the

street.  It was alleged that Arndt was negligent in (1) driving at

a speed greater than reasonable and proper for conditions, (2)

driving at a speed which endangered the safety of others, (3)

failing to avoid colliding with a pedestrian, (4) failing to

exercise proper precautions upon observing a child, (5) failing to

keep a proper lookout to avoid colliding with a pedestrian, and (6)

failing to keep an adequate lookout for children on a roadway in a

residential area.  Count I of the complaint sought damages for the

minor's injuries, and count II sought medical expenses incurred by

the parents.  In her answer, Arndt raised affirmative defenses as

to the child's negligence.  She also filed a counterclaim for

contribution against Tamara alleging that Tamara failed to

supervise the child when she had an opportunity to do so, being in

her yard in proximity of the occurrence at the time of the

occurrence, and failed to train and instruct her minor son to watch

for and yield the right-of-way to automobiles on the roadway before

attempting to cross the roadway.

          According to the declaration sheet, Country Companies

home insurance policy No. C12K2370745 insured the premises at 255

East Sherman Street, Macon, Illinois.  The policy was in effect on

July 27, 1993.  The incident occurred on a public street in front

of the Fisher premises.  No vehicle owned or maintained by the

Fishers was involved in this occurrence.

          The subject policy provided, in relevant part:

          "AGREEMENT

          We will provide the insurance described in

          this policy through the company named on the

          declarations page, if you have paid the premi-

          um and have complied with the policy provi-

          sions.  When we refer to the policy, we mean

          your policy booklet (titled Home Insurance

          Policy), the declarations page, applications

          for insurance, and any endorsements.  The

          coverages you have purchased are stated on the

          declarations page and are subject to the

          limits of liability, exclusions, conditions,

          and other terms of this policy.

          SECTION 1.

          Liability, Coverage A

          We promise to pay on behalf of an insured for

          damages resulting from bodily injury or prop-

          erty damage caused by an occurrence, if the

          insured is legally obligated.  We are not

          obligated to defend an insured after we have

          paid an amount equal to the limit of our

          liability.  We may make any investigation and

          settle any claim or suit we decide is appro-

          priate.

          Medical Payments, Coverage B

          We will pay the necessary medical expenses

          which are incurred within two years from the

          date of an occurrence causing bodily injury. 

          By medical expenses we mean reasonable charges

          for medical, surgical, X-ray, dental, ambu-

          lance, hospital, professional nursing, funeral

          services, and prosthetic devices such as

          artificial substitutes for a limb, eye or

          tooth.  This coverage applies only to:

               1.   a person on an insured location with

                    permission of an insured;

               2.   a person off an insured location if

                    the bodily injury is caused by (a) a

                    condition in the insured location or

                    the ways (such as sidewalks or road-

                    ways) which immediately adjoin, (b)

                    the activities of an insured or any

                    residence employee during the course

                    of that employee's employment by an

                    insured, or (c) an animal owned by

                    or in the care of an insured; or

               3.   any residence employee of an insured

                    during the course of employment by

                    an insured."

Immediately following the provisions are a list of exclusions. 

Only those exclusions relied on by the parties will be discussed.

          There was no liability or medical payment coverage for

bodily injury or property damage:

          "5.  arising from the ownership, maintenance,

               operation, use, loading or unloading of

               (a) any aircraft, or (b) any motor vehi-

               cle or recreational motor vehicle loaned

               to an insured or which an insured owns,

               rents or operates.  Coverage applies on

               the insured location if the motor vehicle

               or recreational motor vehicle is not

               licensed for road use, or is kept there

               in dead storage.

                    This exclusion does not apply to

               bodily injury of residence employees

               resulting from and during employment for

               an insured except while operating or

               maintaining aircraft.  This exclusion

               also does not apply to golf carts while

               being used for golfing purposes."

The policy further provided that there was no liability coverage

for "5.  bodily injury to you and, if residents of your household,

your relatives, and individuals under 21 in the care of the

preceding persons."  On page 4 of the policy, "motor vehicle" and

"recreational motor vehicle" are defined as follows:

          "Motor Vehicle means a motorized land vehicle,

          trailer, or semi-trailer designed principally

          for travel on public roads.  Under Section 1,

          the following are also considered motor vehi-

          cles when they are being towed by or carried

          on a motor vehicle:

          1.   utility, boat, camping or travel trailer;

          2.   farm implements;

          3.   farm machinery;

          4.   recreational motor vehicles;

          5.   any equipment which is designed for use

               principally off public roads and not

               licensed for road use.

          Recreational Motor Vehicle means any motorized

          vehicle designed for recreation, principally

          used off public roads, and not licensed for

          road use."

          Following a bench trial, the trial court found the

household exclusion was not contrary to public policy; the

household exclusion was not invalidated by section 143.01(a) of the

Code; and the occurrence did not arise out of the use of a vehicle

for which coverage was provided under the terms of the policy.  It

was ordered that plaintiff was not required to defend Tamara or

John in the underlying lawsuit or to indemnify them from any

judgment entered against them which arose out of the underlying

occurrence.

          The first issue is whether the subject homeowner's

insurance policy is a policy providing coverage in this case

because a vehicle is involved and the household exclusion in the

policy violated section 143.01(a) of the Code.  Section 143.01(a)

of the Code provides:

               "A provision in a policy of vehicle

          insurance described in Section 4 excluding

          coverage for bodily injury to members of the

          family of the insured shall not be applicable

          when a third party acquires a right of contri-

          bution against a member of the injured

          person's family."  215 ILCS 5/143.01(a) (West

          1994).

The Code classifies vehicle insurance as:

               "Insurance against any loss or liability

          resulting from or incident to the ownership,

          maintenance or use of any vehicle (motor or

          otherwise), draft animal or aircraft.  Any

          policy insuring against any loss or liability

          on account of the bodily injury or death of

          any person may contain a provision for payment

          of disability benefits to injured persons and

          death benefits to dependents, beneficiaries or

          personal representatives of persons who are

          killed, including the named insured, irrespec-

          tive of legal liability of the insured, if the

          injury or death for which benefits are provid-

          ed is caused by accident and sustained while

          in or upon or while entering into or alighting

          from or through being struck by a vehicle

          (motor or otherwise), draft animal or air-

          craft, and such provision shall not be deemed

          to be accident insurance."  215 ILCS 5/4(Class

          2)(b) (West 1994).

          The interpretation and construction of an insurance

policy is a question of law of which the reviewing court may make

an independent determination.  Allstate Insurance Co. v. Eggermont,

180 Ill. App. 3d 55, 61, 535 N.E.2d 1047, 1049 (1989).

               "Generally speaking, if a provision of an

          insurance contract can reasonably be said to

          be ambiguous it will be construed in favor of

          the insured and against the insurer, who was

          the drafter of the instrument.  (Dora Township

          v. Indiana Insurance Co. (1980), 78 Ill. 2d

          376; Glidden v. Farmers Automobile Insurance

          Association (1974), 57 Ill. 2d 330.)  However,

          if the provisions of the insurance policy are

          clear and unambiguous there is no need for

          construction and the provisions will be ap-

          plied as written.  (Menke v. Country Mutual

          Insurance Co. (1980), 78 Ill. 2d 420; Kirk v.

          Financial Security Life Insurance Co. (1978),

          75 Ill. 2d 367.)  All the provisions of the

          insurance contract, rather than an isolated

          part, should be read together to interpret it

          and to determine whether an ambiguity exists. 

          Weiss v. Bituminous Casualty Corp. (1974), 59

          Ill. 2d 165; Cobbins v. General Accident Fire

          & Life Assurance Corp. (1972), 53 Ill. 2d

          285."  United States Fire Insurance Co. v.

          Schnackenberg, 88 Ill. 2d 1, 4-5, 429 N.E.2d

          1203, 1205 (1981).

If possible, provisions in a contract will be reconciled in order

to give effect to all of the contract's provisions.  Butler v.

Economy Fire & Casualty Co., 199 Ill. App. 3d 1015, 1022, 557

N.E.2d 1281, 1286 (1990).

          Defendants argue that the subject policy does provide

coverage for injuries arising out of the use of nonmotorized

vehicles (bicycles, wagons, et cetera).  Defendants also point to

the provisions that indicate the exclusion does not apply in many

instances to the operation of motorized golf carts and motorized

boats.  It is defendants' argument that, since this policy provides

some limited coverage for certain types of vehicles, it is a

vehicle policy within the terms of the statute and the household

exclusion is invalid.  Under the facts of this case, we disagree.

          Defendants rely on a dictionary definition of "vehicle." 

"Vehicle," in this context, is generally defined as "a means of

carrying or transporting something:  CONVEYANCE: as a: a carrier of

goods or passengers ***; specif: MOTOR VEHICLE."  Webster's Third

New International Dictionary 2538 (1993).

          The language of the statute is the best indication of the

legislature's intent, and when that intent can be ascertained from

the language of the statute, it will be given effect without resort

to extrinsic aids for construction.  Solich v. George & Anna Portes

Cancer Prevention Center of Chicago, Inc., 158 Ill. 2d 76, 81, 630

N.E.2d 820, 822 (1994).  There is no rule of construction which

allows a court to declare the legislature did not mean what the

plain language of the statute says, and it is improper for a court

to depart from the plain language by reading into the statute

exceptions, limitations, or conditions which conflict with the

clearly expressed legislative intent.  People ex rel. LeGout v.

Decker, 146 Ill. 2d 389, 394, 586 N.E.2d 1257, 1259 (1992).

          Distinguishable from this case are two cases relied on by

defendants.  In Allstate Insurance Co. v. Brettman, 275 Ill. App.

3d 1040, 657 N.E.2d 70 (1995), the injured children were struck by

a car while they were riding in a carrier that was being pulled

behind a bicycle their mother was walking across a street.  In

Eggermont, a child was injured by a riding lawn mower driven by her

brother.  In Eggermont, the court found that section 143.01(a) of

the Code defeated the household exclusion in the policy.  However,

the court concluded:

          "Lastly, by this holding, we do not, as

          Allstate argues, hold that a family household

          exclusion, contained in an insurance policy

          which also provides some vehicle insurance, is

          totally inapplicable even where no vehicle is

          involved in the incident giving rise to the

          liability of the insured.  We only hold that

          to the extent a policy of insurance, or a part

          thereof, provides vehicle insurance as defined

          under Class 2(b) of section 4 [of the Code],

          and only to such extent, section 143.01(a) [of

          the Code] applies and renders the household

          family exclusion contained in the policy

          inapplicable to third-party suits for contri-

          bution against a member of the injured

          person's family.  Ill. Rev. Stat. 1985, ch.

          73, par. 755.01(a)."  Eggermont, 180 Ill. App.

          3d at 66, 535 N.E.2d at 1053.

          Here, the injury-causing vehicle was not an insured

vehicle and was not being operated by an insured.  The subject

policy is a policy of vehicle insurance under the Code only to the

extent that it provides coverage relating to certain vehicles, none

of which were involved in this incident.  Section 143.01(a) of the

Code does not invalidate the household exclusion contained in the

subject policy under the facts of this case.  It is unnecessary to

consider plaintiff's argument that section 143.01(a) ought not

invalidate the household exclusion of this policy under any

circumstances.  See State Farm Fire & Casualty Co. v. Holeczy, 152

Ill. App. 3d 448, 452, 504 N.E.2d 971, 974 (1987); Country Mutual

Insurance Co. v. Jacobus, 601 F. Supp. 937, 941 (C.D. Ill. 1985).

          The next issue is whether the household exclusion con-

tained in the policy violates public policy.  Defendants argue that

all household exclusions, whether in a vehicle policy or any other

policy, are violative of public policy.  This argument has been

rejected.  Country Mutual, 601 F. Supp. at 941.  Had the legisla-

ture determined a broader prohibition on family exclusion clauses

was appropriate, the legislature could have more severely limited

their application or abolished it altogether.  Household or family

exclusion clauses have been upheld and applied "to avoid the

possibility of collusive claims in a close, overfriendly and

intimate relationship between family members."  Banner Insurance

Co. v. Avella, 128 Ill. App. 2d 471, 475, 262 N.E.2d 791, 793

(1970).  An unambiguous clause in an insurance policy will be

applied as written unless it contravenes public policy.  Hall v.

Burger, 277 Ill. App. 3d 757, 761, 660 N.E.2d 1328, 1331 (1996).  

          The public policies which defendants rely on are the need

to carefully guard the rights of minors and to protect the family

relationship when dealing with a family member's legal rights.  In

Cates v. Cates, 156 Ill. 2d 76, 81-106, 619 N.E.2d 715, 718-729

(1993), the Supreme Court of Illinois extensively discussed the

public policy behind the judicially created doctrine of parental-

child immunity and the exceptions that had been carved from it by

the Illinois courts.  The court addressed the concern that its

decision "opens the door to litigation between parent and child

over ordinary household accidents."  Cates, 156 Ill. 2d at 106, 619

N.E.2d at 729.

          If we accept either of defendants' arguments in this

case, an insurance company issuing a homeowner's policy becomes, in

effect, an insurer of every motor vehicle on the roadway of this

State.  That does not appear to have been the intention of the

legislature in adopting section 143.01(a) of the Code, nor should

it be the public policy of this State.  

          The judgment of the circuit court of Macon County is

affirmed.

          Affirmed.

          STEIGMANN, P.J., and KNECHT, J., concur.